JOHNSON et al. v. SCOTT. (No. 6119.) *

(Court of Civil Appeals of Texas. San Antonio. Jan. 8, 1919. Rehearing Denied Feb. 5, 1919.)

1. HUSBAND AND WIFE ⬥152—RELATION OF PRINCIPAL AND SURETY—EVIDENCE.

Where, after vendee had defaulted and judgment had been obtained against him, he and his wife conveyed property to a trustee who in turn conveyed to the wife, stipulation in deed to wife that she agreed to pay judgment had the effect to bind her as primary obligor and make her husband surety, if she had capacity to make such contract.

2. HUSBAND AND WIFE ⬥152 — POWER TO ASSUME OBLIGATIONS OF HUSBAND.

Where judgment had been obtained against vendee after his default and property was subject to liens in excess of its value, vendee's wife could not, under statutes as they existed prior to the Married Woman's Act of 1913 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 4621, 4622, 4624), in consideration of conveyance to her, bind herself to pay a large consideration to her husband or become personally liable on a contract assuming said judgment.

3. HUSBAND AND WIFE ⬥116—CONVEYANCE TO WIFE OF EQUITY IN LAND—VALIDITY.

While a husband may give to his wife an equity in land, and a conveyance by him directly or through a trustee would vest such equity in her as her separate estate, where equity is worthless, there can be no gift.

4. HUSBAND AND WIFE ⬥162—CONVEYANCE TO WIFE—LEGAL TITLE.

Where equity in land conveyed by husband to wife through a trustee was worthless, the wife should be considered as holding legal title in trust for her husband, at least as to all persons having notice that she took no beneficial interest.

5. HUSBAND AND WIFE ⬥162 — CONTRACT FOR BENEFIT OF SEPARATE ESTATE.

Going through the forms of law appropriate to vest in the wife a right to acquire land of her husband at a cost in excess of its market value gave wife no beneficial interest in property and the purchase by her of a judgment against the land in consideration of her note would not be for the benefit of her separate estate.

6. HUSBAND AND WIFE ⬥162—HUSBAND'S OBLIGATION—NOTE OF WIFE—VALIDITY.

Where wife through a trustee purchased property of her husband subject to liens in excess of its value, held that note given by her for judgment, which husband's vendor had against him, created no personal liability against the wife, either under the Married Woman's Act of 1913 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 4621, 4622, 4624) or prior statutes.

7. HUSBAND AND WIFE ⬥162 — CONTRACT FOR BENEFIT OF SEPARATE ESTATE.

A married woman, after buying property of her husband subject to liens for sums in excess of its value, cannot make valid contracts binding herself personally to pay such sums on the theory that such contracts are for the benefit of her separate property.

8. HUSBAND AND WIFE ⬥162 — NOTE OF WIFE—ESTOPPEL.

In suit on wife's note given in consideration of assignment by her husband's vendor to her of judgment against husband after land had been conveyed to her pursuant to request of vendor, held that vendor, who knew that there were liens against the property in excess of its value, could not plead that wife was estopped to set up that note was not for the benefit of her separate estate.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Suit by John C. Scott against Annie Johnson and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered in part and affirmed in part.

E. P. Scott, of Corpus Christi, R. J. McMillan, of San Antonio, and Pope & Sutherland, of Corpus Christi, for appellants.

W. L. Dawson, of Mission, and Jas. H. Anderson and Kleberg, Stayton & North, all of Corpus Christi, for appellee.

MOURSUND, J. We adopt appellants' statement of the nature of the case:

"This is a suit by appellee, John C. Scott, against appellant Mrs. Annie Johnson, on a promissory note for the sum of $9,920, principal and interest due thereon, alleged by appellee in his petition to be due appellee by appellant Annie Johnson, and that said note was executed for the benefit of the separate estate of said appellant Annie Johnson, who is, and was at the time of the execution of said note, a married woman, and that the payment of said note is secured by a deed of trust executed by the said Annie Johnson, joined by her husband, B. O. Johnson, conveying to A. D. Evans, trustee, in trust, all of the eastern portion or part of lot 12, in block 6, on the beach portion of the city of Corpus Christi, Nueces county, Tex., a part of the separate property and estate of appellant, Annie Johnson.

"Appellant Annie Johnson, specially denied that the note described in plaintiff's petition was executed by appellant Annie Johnson, joined by her husband, B. O. Johnson, for the benefit of her separate property and estate, and alleged the fact to be that the note sued upon was executed by appellant to secure the payment of a previous debt due from her husband, B. O. Johnson, and that at the time of the execution of said note appellant was a married woman, and still is a married woman, and that at the time of the execution and delivery of said note and deed of trust, appellee, John C. Scott, knew that appellant Annie Johnson was a married woman, and that the note sued on was executed by appellant Annie Johnson for the purpose of securing a debt due from her husband, B. O. Johnson, and well knew that said note was not executed for the benefit of the separate property and estate of the defend-

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error denied by Supreme Court March 26, 1919.

ant Annie Johnson, or for necessaries furnished to her or her children, and denied that any valid lien was created on the real estate described in plaintiff's original petition by virtue of the execution of the note and deed of trust described in appellee's first amended original petition, and prayed that the note and deed of trust sued on be canceled and held for naught."

Judgment was entered for appellee, pursuant to an instructed verdict, for $13,150.34, and for foreclosure of the lien as prayed for in the petition.

Appellee, on February 7, 1913, conveyed to B. O. Johnson the property in Corpus Christi, known as the Seaside Hotel, for a consideration of $6,000 cash, notes aggregating $13,000, and the assumption of four notes for $6,250 each to W. H. Bullard, and a note for $6,000 to Mrs. S. J. Rogerson. The next year Johnson married Mrs. Annie Uehlinger, appellant, and the property became their homestead. Johnson having defaulted in the payment of two of the notes given by him to appellee, the latter, on March 11, 1915, obtained a judgment against him upon said notes for $11,558.75, with 8 per cent. interest from date of judgment, and for foreclosure of the vendor's lien retained in the deed from him to Johnson.

On March 18, 1915, B. O. Johnson and wife, Annie Johnson, conveyed said property to Grover C. Keeton, reciting in the deed that it was conveyed in trust for the sole purpose of conveying such property to said Annie Johnson. On the same day Keeton and his wife conveyed said property to Annie Johnson, in consideration of a note by her to her husband, B. O. Johnson, for $10,000, payable on or before January 11, 1920, without interest until after maturity, the deed containing a stipulation that said note "shall not become a personal obligation against said Annie Johnson, or her estate, unless and until the following indebtedness shall have been paid off and discharged in full," the indebtedness referred to being the Bullard notes and the Rogerson note. The deed contains the further statement that the said $10,000 note expressly provides that if the property is lost by foreclosure of either of said liens, meaning those securing the Bullard and Rogerson notes, then Annie Johnson shall not be personally liable to B. O. Johnson for the amount of said note, and that said note is to be secured only by vendor's lien on the property until said liens are satisfied, and then it shall become a legal personal obligation of said Annie Johnson. The deed contains a stipulation that the conveyance is made subject to the Bullard indebtedness, the Rogerson indebtedness, and the judgment in favor of appellee against B. O. Johnson, hereinbefore described, and contains the statement that Annie Johnson agrees to pay off and satisfy said judgment. A lien is retained until the "above-described notes and all interest thereon are fully paid."

On the same day, March 18, 1915, ap-

pellee assigned to Annie Johnson, as her separate property, his judgment against B. O. Johnson, in consideration of the note herein sued on, and the execution of the deed of trust described in plaintiff's petition. The note contains the recital that it is made for the benefit of Annie Johnson's separate estate, and that her husband joins her pro forma.

Johnson and Mrs. Uehlinger entered into an antenuptial agreement, whereby it was agreed that she should, after marriage, have all the rights and authority over her separate estate that a single woman would have. This instrument was not filed for record until April 1, 1915.

On March 18, 1915, Mrs. Johnson, joined by her husband, entered into an extension agreement with Bullard, wherein it is stipulated that the notes evidencing the indebtedness to him are extended for two years after date of the agreement, that the property is the separate property of Mrs. Johnson, and that she assumes the indebtedness, but that she is not to be personally liable to Bullard on the notes or under the agreement.

On August 4, 1917, Bullard secured a judgment against Annie Johnson, B. O. Johnson, and others, foreclosing his lien on the property to pay his indebtedness, interest, and attorney's fees, aggregating $35,624.10. The property was sold under this judgment.

Appellee testified that Mrs. Johnson came in to see him several times, accompanied by Mr. Allison, an attorney; that she was anxious to get the Seaside Hotel property; that he told Allison, "I have got to have assurance and know that this property has been transferred to her as her separate property before I close this trade with her;" that they went on then and made those deeds, transferred it to the trustee and the trustee back to her; that after that was done Allison came in and assured appellee that the whole thing was closed; that the property had been transferred to her and was her separate estate. He testified further that after that was all done, and after Allison's representation that it was her separate property, and acting on the faith thereof, and on her statement in the note that it was her separate property, he assigned the judgment to her and took her note and the deed of trust, both of which instruments were dictated by him. He testified:

"She acquired it as her separate property through a trustee, which in Texas law makes it her separate property. Allison and I agreed on that. That was before she made this note and mortgage to me."

He also testified:

"The judgment against Johnson was worthless; it was secured by a lien on her separate property. The judgment that I conveyed her was worth 200 per cent.; that the Seaside Hotel property was one of the most valuable properties in Southwest Texas."

The trade between Johnson and his wife was to the effect that if she succeeded in paying off the $25,000 lien and the $6,000 lien, as well as appellee's judgment of $11,-558.75, then she would have to pay her husband $10,000, making an investment of about $52,000 for the property. On the other hand, if she was unable to pay the $25,000 and the $6,000 and therefore lost the property, she would not have to pay her husband the $10,000, but would suffer a clear loss of whatever amount she had to pay on appellee's judgment. In this case appellee, instead of selling the property under his foreclosure, preferred to transfer his judgment for $11,-558.75, bearing 8 per cent. interest, to Mrs. Johnson for her note for $9,920, bearing 7 per cent. interest, payable on or before five years after date, and secured by a mortgage on property owned by her. This transaction raises a decided inference that the Seaside Hotel property was not worth in the market the amount of the first two liens and appellee's judgment debt. It is true appellee testified his judgment was worth 200 per cent., but at another time he stated it was worthless, and it appears to us that when he said it was worthless he meant so far as its collectibility from Johnson was concerned, and when he said it was worth 200 per cent. he did not mean it was worth double its face value, but that it was a valid judgment. He did not testify that the property at that time had a market value in excess of $40,000, nor did any one else. The evidence wholly fails to show that Mrs. Johnson could derive any benefit from paying $9,920 out of her separate estate in order to satisfy the third lien on the Seaside Hotel property. Such a transaction could not be beneficial unless she had a substantial equity to protect.

[1] The legal effect of the agreement of Annie Johnson, stipulated in the deed to her, to pay off the judgment of appellee, would be to bind her for the payment of the judgment as a primary obligor, and the relation of her husband would become that of surety, if she had the capacity to make such a contract. Brannin v. Richardson, 108 Tex. 112, 185 S. W. 562.

[2] But it is clear that under our statutes as they existed prior to the act of 1913 she had no capacity to bind herself to pay the $10,000 to her husband nor to make herself personally liable on a contract assuming the payment of the judgment of appellee. Still, as a vendor's lien was retained by Keeton, to secure the payment of the note to her husband, and other notes, it appears that by taking proper steps Johnson could recover the land if she failed to pay. Speer's Law of Marital Rights in Texas, § 172. In the opinion of the Supreme Court, in the case of Red River National Bank v. Ferguson, 206 S. W. 923, not yet officially published, it is held that the act of 1913 (Acts 33d Leg. c. 32 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 4621, 4622,

208 S.W.—43

4624]) does not confer upon married women the general power to make contracts, and that the power to make contracts for the benefit of her separate estate must be deduced by implication, if it exists at all, since the language expressly conferring such power, formerly in the statute, was omitted in the amending the article in which it had been contained.

[3-5] The husband can give to the wife an equity he owns in land and a conveyance by him, directly or through a trusee, would vest such equity in her as her separate estate, but we have found no case in which it has been held that a transaction, such as was made between Johnson and his wife, could be given effect. There was no gift, for, as far as the record shows, his equity of redemption was worthless. She took no beneficial interest, so far as the evidence discloses, and at least as to all persons having notice of that fact, it appears to us, she should be considered as holding the legal title in trust for her husband. Payment by her out of her separate estate would to the extent thereof give her a beneficial interest in the property, but at the time she gave her note to appellee, which was on the same day and immediately after the transaction by which the legal title was vested in her, she had no beneficial interest in the property, so far as the record discloses. But after she had gone through the forms of law appropriate to vest in her the right to acquire the land at a cost in excess of its market value, appellee felt that he could safely contract with her, on the theory that the contract would be for the benefit of her separate estate. His view is disclosed by his testimony:

"That note was executed to save her separate property; her separate property was going to be sold under an execution in this court, and in order to save her separate estate she executed that note and got away with the judgment."

The law looks to the substance of a transaction, and not to the form. In the Ferguson Case, hereinbefore referred to, Chief Justice Phillips, speaking of the power of married women to make contracts, said:

"The limitations upon her authority are but the expression of a scrupulous concern for the preservation of her estate, and were imposed to that end. In that interest her authority to contract debts at all was confined to those essentially to her advantage, that is, for necessaries for herself or her children and the benefit of her estate, with a court, in all suits against her for such debts, charged with the duty of seeing that they were actually incurred for those purposes and were reasonable and proper."

Chief Justice Hemphill, in the case of Lynch v. Elkes, 21 Tex. 229, said:

"There was no proof that the land purchased was to be her separate property, and, if there had been, courts would not allow the whole,

perhaps, of her separate estate to be sacrificed in attempts to make additional purchases without proof of benefit or advantage, and with the certainty in fact of detriment and loss. I shall not enter into the discussion of the liabilities of married women. It is manifest at a glance that if obligations of this character were enforced against the property generally of a feme covert, she might be suddenly reduced to penury, and the shield of her disability be rendered wholly worthless, if not converted into an instrument for her destruction."

[6, 7] The views above quoted cannot be harmonized with any theory that a married woman, after buying property subject to liens for sums in excess of its value, can then make valid contracts binding herself personally to pay such sums on the theory that such contracts are for the benefit of her separate property. Such contracts would be for the purchase of property instead of expenses for the benefit of her separate property. The construction of the omitted statute, with reference to expenses incurred for the benefit of separate property, announced by Judge Speer in section 157 of his Law of Marital Rights in Texas, appeals to us as undoubtedly correct. That statute was never intended to grant power to married women to bind themselves personally for purchase money of property, whether at the instant of acquiring an equity, or after the acquisition thereof. And such power, existing by implication as an incident of ownership, to which appellee is relegated in view of the omission of the provision above discussed, is of course very limited, and could not possibly authorize her to bind herself personally for purchase money of property.

[8] Appellee also relies upon estoppel. Any one who contracts with a married woman is of course chargeable with knowledge of the law relating to such contracts, and knows that he must be prepared to prove the existence of such a state of facts as will support her power to bind herself. Appellee, who is an attorney, knew what liens were against the property, and what instruments were relied on to place the title in Mrs. Johnson, for they were drawn after discussion with him, and after he had insisted that he would not close the trade with her unless 'the property was transferred to her as her separate property. He did not read the instruments, but relied on the statement by her attorney that the property had been transferred to her and was her separate estate, and also relied on the statement to that effect contained in the note he dictated.

The representation was coupled with such information as apprised appellee that it involved only a legal opinion based upon the transfers. To permit him to rely on estoppel in such a case would be "to ignore the plain requirements of the law in a particular of which the person complaining was charge-

able with notice." Appellee was chargeable with notice of every fact he would have ascertained had he read the instruments on which the legal opinions were based. There is no merit in the plea of estoppel.

The record sufficiently discloses that objections to the peremptory instruction were presented before it was read to the jury.

The judgment is reversed in so far as Mrs. Johnson is held personally liable, and judgment rendered that plaintiff take nothing in so far as he prays for that character of judgment. In all other respects it will be affirmed.

Reversed and rendered in part, and affirmed in part.

───────

⬖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes