DICKINSON et al. v. GRIFFITH LUMBER CO. (No. 6239.)

(Court of Civil Appeals of Texas. San Antonio. June 7, 1919.)

HUSBAND AND WIFE ⬉162—CONTRACTS BY WIFE—OWNERSHIP OF MERCANTILE BUSINESS.

In view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 4629a–4629d, and notwithstanding article 4621, and the Married Woman's Act of 1913, wife's contract to purchase wood for wood yard, owned by her, is void, wife having no right to make personal contract in conducting mercantile or trading business such as wood yard, as distinguished from contract of conveyance or disposition of her separate property.

Appeal from District Court, Bexar County; J. T. Sluder, Judge.

Suit by the Griffith Lumber Company against W. L. Dickinson, A. A. Luther, and Augusta B. Luther. Judgment for plaintiff and defendant Dickinson against defendants Luther, and defendants Luther appeal. Reversed, and judgment rendered for defendant Augusta B. Luther, and for plaintiff against defendants Dickinson and A. A. Luther.

Chambers & Watson, of San Antonio, for appellants.

Barrett, Eskridge & Barrett, of San Antonio, and Hood Boone, of Mission, for appellee.

FLY, C. J. Appellee sued W. L. Dickinson, A. A. Luther, and Augusta B. Luther, alleging that during December, 1917, and January, 1918, they were operating a business in the name of the Alamo Wood Yard, or Alamo Wood Company, buying and selling wood for profit; that, acting through Dickinson, they purchased about 24 carloads of mesquite and oak wood from appellee, agreeing to pay therefor $2.75 to $4 a cord for the same; that the total amount that became due and payable to appellee for said wood was $1,386.75, on which amount there had been a payment of $211, leaving due and unpaid $1,175.75; that the Alamo Wood Yard, or Alamo Wood Company, was owned by Mrs. Augusta B. Luther, the same being operated by Dickinson; that on or about January 15,

1918, A. A. Luther and Augusta B. Luther took over the management and control of the wood yard and agreed to pay all the sums due for wood to appellee; that Dickinson was either a partner in the company or was manager thereof, with full power and authority to purchase the wood from appellee, and that said wood, or a large part thereof, was still in the yard when the management was resumed by the Luthers, and they sold it and received the proceeds of the sale, knowing that it had not been paid for. The Luthers answered by general denial, and Mrs. Luther pleaded that she was the wife of A. A. Luther, and both denied that they were partners of Dickinson. The latter pleaded a general denial. Judgment was rendered against the defendants in favor of appellee for $832, and for Dickinson against the Luthers for $650. This appeal is by the Luthers.

The following conclusions of fact of the trial judge are adopted by this court:

"In November, 1917, Mrs. Augusta B. Luther was the owner of the Alamo Wood Yard, subject, however, to a balance of an indebtedness thereon to one L. B. Randall. A. A. Luther is the husband of said Augusta B. Luther, and was her authorized agent in the handling of the matters of said wood yard and in all subsequent transactions had by him with the other parties to this suit. Acting in this capacity and for himself, he did on or about the 13th day of November, 1917, make an arrangement with the defendant W. L. Dickinson, under the terms of which the said Dickinson took charge of the wood yard as manager for the defendants Augusta B. Luther and A. A. Luther. The said W. L. Dickinson was to manage the said wood yard and from the proceeds take care of monthly payments on the Randall indebtedness and other items, and when all of these obligations were discharged, if they were, was to pay to A. A. Luther and Augusta B. Luther about $250, and was then to own the yard.

"Some time in December, 1917, said W. L. Dickinson, as manager for the Alamo Wood Company, which sometimes operated under the name of Alamo Wood Yard, contracted with the Griffith Lumber Company for wood, which was to be shipped by the lumber company from Jourdanton, Tex., to the Alamo Wood Company and paid for as received. Beginning December 19, 1917, and extending until January 17, 1918, the Griffith Lumber Company shipped to the Alamo Wood Company 24 cars of wood, all of which were received by said Alamo Wood Company. The total purchase price therefor was $1,043.50.

"On or about January 9, 1918, W. L. Dickinson became ill, and thereafter and on or about January 13, 1918, the defendant A. A. Luther, acting for himself and the said Augusta B. Luther, took charge of said wood yard.

"During the time wood was being shipped by the Griffith Lumber Company to the Alamo Wood Company the said Alamo Wood Company also purchased from other parties a total of 14 cars of wood, and at the time the defendant Luther took charge there was wood on hand in the yard amounting to 312½ cords. At the time the said Luther took charge of the yard there had been no default by the said Dickinson in the payments to Randall and the rent.

"The wood purchased from the Griffith Lumber Company was purchased through one Madden, the authorized agent of the lumber company at Jourdanton, Tex. About the time Luther took charge of the wood yard Mr. Madden called the office of the wood company over the phone and had a conversation with A. A. Luther, in which the said Luther stated to Madden that W. L. Dickinson was his (Luther's) manager of the wood company, that Dickinson was then ill, and that Luther had taken charge and was checking up the accounts. A few days thereafter Madden came to San Antonio, and he and Luther called upon W. L. Dickinson at his home. At this time, and in the presence of W. L. Dickinson, Luther told Madden that he (Luther) would check with Dickinson as soon as he recovered, and that he (Luther) would pay the Griffith Lumber Company for all wood shipped to and received by the Alamo Wood Company.

"Prior to W. L. Dickinson's illness he sent a check to be applied upon the purchase price of the wood to the Griffith Lumber Company in the sum of $211. This check was returned unpaid, and after Mr. Dickinson's illness said check was taken up and paid by A. A. Luther. Except as to this payment, nothing has been paid upon the account of the Griffith Lumber Company, and there is a balance due of $832.50.

"A. A. Luther sold the wood on hand at the average price of $6.50 a cord, exclusive of the cost of retail delivery. At the time Luther took charge the defendant Dickinson had on deposit in the Merchants' & Mechanics' Bank of San Antonio the sum of $333.17. Of this amount $100 was transferred to L. B. Randall to apply upon a payment of his indebtedness then due and $35 to cover rent account. The balance of $198.17 was transferred to the account of A. A. Luther. At the time A. A. Luther took charge of said wood yard he knew, or immediately thereafter he learned, that the wood purchased from the Griffith Lumber Company had not been paid for."

The first, second, third, and fourth assignments of error are disposed of by our adoption of the conclusions of fact of the trial court.

The fifth assignment of error is overruled. Appellants were the owners of the business, and were not promising to pay the debts of another, when they agreed to pay the debts incurred in the business by Dickinson.

The sixth assignment of error challenges the authority of the trial judge to render a judgment against Mrs. Luther, because she pleaded coverture. The court found that Mrs. Luther was the owner of the wood yard, that it was her separate estate, and her husband was her agent, and, if bound at all, it must be based upon her power and authority to own and conduct a business. Under the provisions of article 4621 of Vernon's Sayles' Ann. Civ. St. 1914, the married woman is clothed with the authority of the "sole management, control and disposition of her separate property, both real and personal." That

act would seem to give full and complete control, management, and disposition of the woman's estate to her, except as to joinder of the husband being required in the conveyance or incumbrance of the separate real estate of the wife and the transfer of stocks and bonds. However, the law as to married women has recently been considered by the Supreme Court of Texas, and the decision, instead of holding that the married woman has been "manumitted" or "emancipated" as to her separate estate, seems to broadly intimate that she has not now as much control over her separate property as she had in older, if not better, times. Red River Bank v Ferguson, 206 S. W. 923. After discussing the caption of the act denominated the "Married Woman's Act of 1913," and holding that things stated in the caption failed to be placed in the body of the act, it was held:

"Furthermore, although the caption announces that the wife is to be clothed with apparently unfettered authority to contract, article 4624 is so amended by the act itself as to leave her wholly without express * * * power to contract for the benefit or preservation of her separate estate—a statutory and necessary power, and one with which she had been invested since the act of March 13, 1848, a period of 65 years."

The opinion seems to accede to the proposition that the married woman has been given the control and management of her separate estate, but denies that such control and management carries with it any authority to make contracts, which would seem to render such management and control weak and ineffective. In fact, the only real benefit given the married woman under the act of 1913 is the protection of her personal earnings, rents from her real estate, interest on her bonds, and notes, and dividends on stocks owned by her. Before the passage of the act such property was considered community, under the control of the husband; but now the wife has the sole control, management, and disposition of such property, subject to the conditions of article 4621. This protection from the greed and rapacity of predatory and designing husbands seems to be all that is left, out of the "Married Woman's Act," upon which the wives of Texas can hang their hopes of protection from their matrimonial mates. In construing the act in question, Judge Levy, for the Court of Civil Appeals of the Sixth District, held, in the cited case of Bank v. Ferguson, 192 S. W. 1088:

"By these articles there is clearly conferred upon the wife the authority of management, control, and disposition, with certain limitations, of her separate property. But the phraseology of the entire amending act does not point out nor in words undertake to give to a married woman the right generally to make personal contracts, in distinguishment between contracts of conveyance or disposition of her separate property. And the language necessary to cre-

ate and give to a married woman the power generally to bind herself personally as if a feme sole is not within the terms and scope of the amending act. * * * If the Legislature had intended to remove any of the disabilities of coverture theretofore existing, it is not likely that it would have deliberately dropped from the bill language expressive of that intent and retained that portion which could operate to qualify or restrict the new rights theretofore granted."

The court refers to articles 4629a to 4629d, which provide for removing the disabilities of married women, and holds that the right to contract was not given by the act of 1913, because the former articles provided a method for getting that right. Those articles of the statutes, however, seem to give little aid to married women, as the rights obtained thereby are conditioned upon the consent and joinder of the husband in the application.

Articles 4629a has some pertinency to this case, because the Legislature deemed it necessary to pass the law in order to give the married woman the right to enter into mercantile and trading enterprises. If she had that right, it would not have been necessary to remove her disabilities of coverture and declare her a feme sole for mercantile and trading purposes. It is clear, then, that she had no such right, independent of the provisions of articles 4629a to 4629d, prior to the passage of the act of 1913, and she has no such right now, unless it is granted by that act. The effect of the holdings in the Bank v. Ferguson Case is to deny any right to enter into a mercantile or trading business, such as conducting a wood yard, for it is clear and undeniable that such a business could not be conducted without the power to contract. This suit is based on a contract made by the married woman in conducting the business of buying and selling wood.

Judge Speer in his work on the Law of Marital Rights in Texas, while asserting that the act of 1913 gives married women the right to make any contract that unmarried women can make, with the sole exceptions named in the statute, then says:

"It is just that wives should be allowed to contract, and the whole purpose of the act upon this point is to empower them to do so, except as they are forbidden in the act itself. * * * In other words, the change wrought is that, where the power to contract was originally denied generally, but authorized specially, it is now denied specially and authorized generally." Section 148.

There is a wide gulf between that expression of opinion and one denying the statutory right to even "contract debts for the benefit of her separate property." Speaking of the right of married women to engage in mercantile business, Judge Speer is of the opinion that she cannot do so without complying with the requirements of articles 4629a to 4629d, hereinbefore mentioned. He says:

"There is no rule of law prohibiting a wife from becoming a merchant on her own account, but, in the very nature of the enterprise, its successful management by her is so at variance with our whole theory of her marital disabilities that such a thing is well-nigh impossible. For the very things most necessary to be done as a merchant are the very things she cannot do by reason of her coverture."

This was said under the provisions of the law of 1913, which the author thought greatly enlarged the powers of married women.

The foregoing applies to the wife as a sole trader or merchant, but she encounters the same difficulties when she attempts to enter a partnership with her husband or any one else. If she enters the partnership with her husband, the effect is to make him liable, for his contract is binding, while hers is not. Speer, Married Women, § 257. This must be the true theory under the decisions in Bank v. Ferguson. That the Supreme Court will adhere to its opinion in that case is apparent from the denial of writs of error in the cases of Johnson v. Scott, 208 S. W. 671, and Mills v. Bank, 208 S. W. 698. In the latter case this court held that a married woman, under article 4624, had no express authority to contract debts for the benefit of her separate property, "and if such power existed at that time it derived its existence by implication as her power of ownership."

We conclude, if Mrs. Luther owned the wood yard business, she had no authority to contract the debt for wood, and, if she was a partner in the concern, she was not bound by any contract of her partners.

There are no pleadings in the record to form a basis for a judgment over against the Luthers in favor of Dickinson. The other assignments of error are overruled.

The judgment of the lower court is reversed, and judgment here rendered that appellee take nothing as against Mrs. Augusta B. Luther, and that it recover of A. A. Luther and W. L. Dickinson the sum of $832.50, with interest thereon at the rate of 6 per cent. per annum from January 1, 1918, and all costs incurred by them in this and the lower court.

MOURSUND, J., entered his disqualification in this case.