## COATS v. BOCKSTEIN et al.

### No. 2417.

Court of Civil Appeals of Texas. Eastland.

Dec. 3, 1943.

Rehearing Denied Jan. 14, 1944.

Floyd Jones, of Breckenridge, for appellant.

Robert E. Grantham, of Cisco, for appellees.

LESLIE, Chief Justice.

Plaintiffs Harry Bockstein et al. instituted this suit against Lee Coats, alleging that at his "special instance and request" and while doing business under the name of "Coats Grocery and Market" they sold and delivered to him at time specified in the attached verified account goods and merchandise for which he promised to pay plaintiffs $251.82. They further alleged that for several years past they had sold such merchandise to the defendant doing business under said trade name.

By verified answer the defendant denied the allegations of plaintiff's petition and specifically denied that he ever conducted a mercantile business under said trade name, and he affirmatively alleged that the mercantile business conducted under that name was at all times owned by his wife and exclusively managed and controlled by her. That he was in no way interested therein; that he never ordered any of the merchandise on his own account or assumed any obligations therefor; that his wife, Ethel Coats, owned and operated the business for a long time prior to the date he married her; that after such

marriage she owned and conducted the business as she had done prior to the marriage and was also the exclusive owner of the fixtures.

This suit is not an attempt to establish personal liability on the part of Mrs. Ethel Coats, the wife of defendant Lee Coats. This is not a case where the profits on investments of a wife's separate estate are community property and liable for the husband's debts, and where, if the profits be mixed with the wife's separate estate, in a contest between the wife and husband's creditors, the burden is upon the wife to show how much of it retained the character of separate estate, or, if any part of it has undergone mutations, to trace and identify it.

Neither is it one where the subject matter of the suit or the acquisition of the merchandise can be construed as a contract for necessities for the wife and children, or as a contract made by the wife in the exercise of her power of exclusive management and control of her separate property, or community property confided to her control and the contract relating thereto reasonably necessary to make such power effective. Cauble v. Beaver-Electra Refining Co., 115 Tex. 1, 274 S.W. 120; Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799; Dickinson et al. v. Griffith Lumber Co., Tex.Civ.App., 213 S.W. 341.

Further, the suit does not involve the levy of attachment or execution on a stock of goods claimed and managed by the wife, where such writ is based on a judgment against the husband for his debt. The suit is simply one for debt involving a sale of goods which plaintiffs alleged they sold Lee Coats at his "special instance and request." The issue is his personal liability under the circumstances, and no questions arise as to the nature of property seized or levied upon.

Mrs. Coats was first married to a Mr. Cockrell, and for a number of years they conducted the "Cockrell Grocery and Market" at Breckenridge, Texas. Later she procured a divorce from him, and the decree in adjusting property rights awarded to her the Cockrell Grocery and Market, with its stock of goods and fixtures. With these and at the same place she immediately engaged in the grocery business in her own right under the name of "Cockrell Grocery and Market." This business continued for three or four years, during which time she purchased considerable quantities of goods from the plaintiffs and through their agent, who was a principal witness on the trial of this case. During that period of time her ownership of the business and method of conducting the same became well known to the plaintiffs and their salesmen, and she was regarded by them as a valuable customer. She so conducted that business for three or four years, at the end of which time she married the defendant Lee Coats.

Thereupon she changed the name of the business to "Coats Grocery and Market" and continued to run the business as before. In that way she so managed and controlled the business as the Coats Grocery and Market for ten or twelve years, or until she closed it out. During this time she purchased merchandise and replenished the stock, and paid therefor with funds derived from the sales of other goods in stock. The plaintiffs continued to sell her merchandise as they had theretofore done during the three or four years subsequent to the divorce and prior to her marriage to defendant. They regarded her as the manager and adjusted all claims with her, selling her at the rate of $350 or $400 worth of goods per month.

Reflecting the manner in which the business was conducted and how the plaintiffs regarded the same and her connection with it, the chief witness, Switzer, testified in part as follows:

"Q. And she (after divorce) still continued to conduct the business as Cockrell Grocery and Market? A. Yes.

"Q. Up until the time she married the defendant here (1933)? A. That's right.

"Q. During all that period of time you called on her and sold merchandise? A. Yes.

"Q. Then she married the defendant some ten or eleven years ago? A. Yes.

"Q. And she continued to conduct a grocery and market business? A. Yes.

"Q. As far as the manner of conducting that business, it wasn't changed any with reference to the management of it after she married: A. No, she—

"Q. She continued to operate the business from day to day? A. She bought and paid for merchandise.

"Q. After she married she did continue to buy the merchandise herself if she was present? A. Yes.

"Q. She made all adjustments? A. Yes.

"Q. She paid all of the bills? A. Yes.

"Q. Every check that was ever given you on account, she signed that check, didn't she?.

\* \* \* \* \* \* \*

"Q. Of course, in the business you deal in they sell produce; there are lots of adjustments to be made or at least a lot of claims? A. Yes, there is lots of criticism.

"Q. Those transactions were always handled by Mrs. Coats? A. Yes.

\* \* \* \* \* \* \*

"Q. They knew that Mrs. Cockrell or Mrs. Coats was transacting the business? A. That's right."

This witness further testified that during the several years the Coats Grocery and Market was running he was in and out of the place of business "every day except Sunday". That he conducted his negotiations exclusively with Mrs. Coats, unless she happened to be out or was sick. Plaintiff's witnesses all testified defendant Coats "was in there sometime, off and on."

In harmony with his pleadings, defendant Coats testified that he did not own the business, had no personal connection therewith, and in no way authorized or requested the company to sell goods to him individually or to him and his wife as the "Coats Grocery and Market." He further testified that whatever he did at any time when he happened to be about the place of business was done under authority and request of his wife and merely with the intention of being helpful when he was occasionally at the store, and not as an owner of any interest in the business.

Mrs. Coats traced the history of the business, testified she had owned it for about fifteen years. That after procuring the divorce from Cockrell she ran the business three or four years before her marriage to Coats. That after such marriage the name of the company was changed as indicated, but that she continued to run the business as before, and in her separate right and ownership. That she sold groceries and meat, deposited the money to the account of Coats Grocery and Market and paid all bills with checks drawn thereon by her. That the fixtures were separate property and acquired through the divorce decree. She detailed or described the manner in which she conducted the business,

hired and discharged employees, replenished stock, paid taxes on the property as individual owner, and rendered the same as her own for taxation, etc.

In further corroboration of her testimony, promissory notes were introduced in evidence. Customers defaulting in payment of their accounts executed their personal notes payable to her. Cigarette licenses were issued to her. Of the fifty invoices covering goods involved in the transactions in suit, five of them were signed by her husband. The testimony was that he signed them at a time when she was sick or unable to be at the store, and that he did so at her instance and request and merely to render assistance as her agent on those occasions.

The above reflects in general the nature of the testimony, and it occurs to us that the plaintiffs' testimony amounts to a confirmation of the defendant's theory of the case. Anyway, we have carefully reviewed all of the testimony, and after due consideration thereof we conclude there is no evidence in the record tending to show personal liability on the part of Lee Coats for the merchandise in suit. As said, there is no contention that the wife purchased the goods in her own right to contract for necessaries for herself and children, and there is no proof whatever that she, in purchasing the merchandise, did so as her husband's agent.

In Jones v. O. W. Lyman Millinery Co., 63 Tex.Civ.App. 197, 132 S.W. 864, 865, the court held: "There is no statute in this state making the husband liable for the general community debts contracted by the wife, and unless appellee in this case can show that appellant either expressly or impliedly authorized the making of the debt sued on, it has no cause of action against him. To be sure, the husband may appoint his wife his agent, as he may any other person, and this appointment may be evidenced by express agreement or by implication; but it must in some way appear, for she is not necessarily his agent merely because she is his wife. Richburg v. Sherwood, 101 Tex. 10, 102 S.W. 905; Speer's Law of Married Women, § 67. Appellant and his wife both testified that he had nothing to do with the purchase of the bill of goods for which this suit was brought, and he specifically testified that he advised against it at all times, refused to furnish the money to make the pur-

chase, or to sign the lease contract for the building in which to conduct the business, and, in short, he was 'mad all the time the thing was going on.' To say the least of it, the court should have submitted to the jury as a question of fact whether or not the purchases were made upon the authority of the husband, in which event only could he be bound."

The theory upon which the husband may be held is clearly reflected by the above quotation. The testimony in the instant case, however, is conclusive that the goods delivered to Coats Grocery and Market were not sold upon the authority of the husband or under circumstances creating personal liability on his part for the purchase price.

As said in Speer's Law of Marital Rights (3rd Ed.) p. 362: "Of course, the husband is not liable for the contracts of the wife in her trading business. Nor is he liable, though he acted in her behalf, in purchasing the business, merely because for want of a compliance with the statutes, she herself is not liable."

For this the text cites Stevens v. Lilley, Tex.Civ.App., 7 S.W.2d 883.

On page 366 of the same text, the author says: "It does not necessarily follow that the husband would be liable for the wife's purchases on credit in her mercantile business. If he is liable, it is only upon the theory of agency,—that is, that she really purchased for him,—but unless he in some way makes the purchase his he is not bound." Citing Jones v. O. W. Lyman Millinery Co., 63 Tex.Civ.App. 197, 132 S.W. 864. See 23 Tex.Jur. p. 146, Sec. 118.

These are statements of sound propositions, and, under the pleadings and all the testimony, applicable to the instant case, exonerating the defendant from the personal liability alleged.

The testimony to the effect that the defendant rendered several minor or helpful services about the store when he was there, or when his wife was absent or sick, when considered in the light of all the testimony, does not rise to dignity of raising an issue as to his liability for the merchandise involved in this suit.

The case has been fully developed and no useful purpose will be served by reversing and remanding the same. The judgment of the trial court will, therefore, be reversed and here rendered that the plaintiffs take nothing by their suit against the defendant.

It is so ordered.